Opinion by
Rice, P. J.,
As the assignments of error do not relate to any ruling upon a question of evidence or to any instruction which the court gave or declined to give to the jury, and as neither the evidence nor the charge of the court is printed in the appellant’s paper-book, any allusion by us to the merits of the case is not required and would be out of place. We make this remark, because both in the appellant’s history of the case and in the appellee’s counter history we find reference to the relation *245 of the defendant and of the lodge of which he is said to be a member to the Masonic order. Whatever may have been the relevancy of these matters to the questions that.arose upon trial, it is obvious that they have no pertinency to the question whether the indictment charged an indictable offense.
The judgment to be entered on this appeal depends exclusively upon the determination of that question, and that in turn depends upon the constitutionality of the clauses of the Act of March 28, 1907, P. L. 35, which make.it a misdemeanor for any person “to wear or use, or aid in the wearing or use of, any emblem, badge, button, device or insignia, falsely or with intent to deceive.” The appellant’s counsel argue from the context that this clause refers exclusively to the emblem, badge, insignia, etc., of “any secret fraternal association, society, order or organization which has had a grand lodge having jurisdiction in this commonwealth for ten years or longer.” This view Was evidently taken in drawing the indictment, it is not controverted by the commonwealth’s counsel, and we are inclined to think it is the correct view. Does this restriction of the provision bring it into conflict with clause 27, section 7, article III, of the constitution which forbids the legislature to pass any local or special law “ granting to any corporation, association, or individual any special or exclusive privilege or immunity”? Argument that certain legislation is unwise, or dangerous in its tendencies, or contrary to the spirit of our institutions, or is special in that it does not apply to every case equally within the mischief to be remedied, can be of little avail upon the question of its validity unless the provision of the fundamental law with which it conflicts can be pointed out. “Nothing but a clear violation of the constitution, a clear usurpation of powers prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void:” Sharswood, J., in Penna. R. R. Co. v. Riblet, 66 Pa. 164. “The party who wishes ■ to pronounce a law unconstitutional takes upon himself the burden of proving beyond all doubt that it is so:” Black, J., in Erie & North-East R. R. Co. v. Casey, 26 Pa. 287. “Nor are the motives of the legislators, real or supposed, in passing *246 the act, open to judicial inquiry or consideration. The legislature is the lawmaking department of the government, and its acts in that capacity are entitled to respect and obedience until clearly shown to be in violation of the only superior power, the constitution:” Mitchell, J., in Commonwealth v. Moir, 199 Pa. 534. The fact that the framers of the constitution specified in great detail the subjects in relation to which the legislature is prohibited to pass any special law would of itself be a conclusive reason, even if there were no other, for adhering strictly' to the rule that exceptions from the general grant of legislative power are not to be carried beyond the proper import of the words used. Viewing the case before us in the light of these principles, we are unable to conclude that the statutory provision above quoted and the constitutional provision are in conflict. The former applies to the whole state and no person is excepted from its operation. It neither grants nor denies to any fraternal association or individual the exclusive right to use any particular emblem, badge, button, device or insignia. Whatever rights, exclusive or otherwise, which the secret organizations of the class mentioned in the act have in that regard are not derived directly or indirectly from this legislation, and are neither strengthened nor confirmed thereby; the law does not undertake to deal with that subject. Nor does the act make it lawful to wear or use the emblems, badges, insignia, etc., of other secret or nonsecret societies fraudulently or with intent to deceive; nor does it change the quality of that act or deprive such societies or their members of any existing remedy relating thereto. It is to be observed further that the act does not grant to the societies described therein and their members, while withholding it from other societies and their members, any private remedy for the prevention or redress of injury arising from the fraudulent use of their emblems, insignia, etc. It siipply provides a public remedy for a kind of fraud and deceit, which, apart from its infringement of the rights of societies or individuals, as such, was deemed by the legislature to involve such turpitude and to affect the public injuriously in so large a degree as to justify it in declaring it to be a misdemeanor and punishable as such. *247 Whether there was equal propriety or occasion for extending this public remedy to the fraudulent use of the emblems, badges, and insignia of all fraternities, secret or otherwise was a legislative question. The strongest argument that- can be made to show that there was such propriety or occasion falls far short of proving that the legislature did not act in good faith and upon deliberate judgment in making the distinction, or that its motive was to favor a particular class of secret societies, or that the effect of the legislation, even though no favoritism was intended by the legislature, was to grant any special privilege or immunity to anyone. The conclusion that this clause of the act .does not violate the constitutional provision under consideration is supported by the case of Commonwealth v. Norton, 16 Pa. Superior Ct. 423, wherein the constitutionality of the provision of the act of May 21, 1895, making it a misdemeanor to counterfeit labels adopted by workingmen’s unions was under consideration. The ground of the decision appears in the following quotation from the opinion of Judge W. W. Porter: “So far as the case before us is concerned, we are determining only that the legislature has the right to impose a penalty upon the commission of an act of turpitude. That the man who counterfeits or imitates a label, purporting to be a union label, is doing that which is wrong, has been already decided: McVey v. Brendel, 144 Pa. 235. It is the public wrong that is being redressed, not a private injury. It is the counterfeiting of instruments of a certain class with which we have to do. We are not prepared to hold that a statute declaring such an act a public wrong and an indictable offense is unconstitutional and void, because it does not include every trade-mark or label which individuals or associations may adopt.”
It is urged further that the act is in contravention of section 3, article III, of the constitution which reads: “No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in the title.” Two questions are presented, first, whether the act contains more than one subject, secondly, whether the subject is clearly expressed in the title.
*248 The history and purpose of this constitutional provision have been stated many times in cases involving its construction and are well understood. The purpose of the provision that the act shall not contain more than one subject was, not to require that every distinct legislative mandate or prohibition shall be the subject of a separate bill, but to prevent a number of different and unconnected subjects from being gathered in one act, and thus to prevent unwise or injurious legislation by a combination of interests. Whatever objection may be urged upon other constitutional grounds against some of the provisions of this act, we think it cannot be said that the act as a whole is of the character of vicious legislation which the constitutional provision as to singleness of subject was intended to prevent.
The remaining inquiry is as to the sufficiency of the title. We need not stop to show that if an act contain two or more subjects within the meaning of the constitutional prohibition, the fact that these are clearly expressed in the title would not save it; but it has occurred more than once that although the act could not be said to contain more than one subject, and although the title was sufficient to give notice of the legislation contained in some of its provisions, yet as to other matters the scope of the act was broader than the title indicated. The general rule applicable to such cases is to sustain the portion of the act of which the title gives notice, if it be in itself a complete and sensible enactment which is capable of being executed, unless it be so linked with the unconstitutional provisions as to lead to the conclusion that the former would not have been adopted by the legislature without the latter: Dorsey’s Appeal, 72 Pa. 192; Allegheny Co. Home’s Appeal, 77 Pa. 77; Allegheny City v. Moorehead, 80 Pa. 118; Dewhurst v. Allegheny, 95 Pa. 437; McGee’s Appeal, 114 Pa. 470; Commonwealth v. Lloyd, 2 Pa. Superior Ct. 6; McGarry v. McGarry, 9 Pa. Superior Ct. 71; Commonwealth v. Hanley, 15 Pa. Superior Ct. 271; Commonwealth v. Caulfield, 27 Pa. Superior Ct. 279. This act is not within any of the recognized exceptions to this general rule. Hence, even if it be conceded (as is very earnestly and ably argued by appellant’s counsel) that the first *249 clause relative to publication or the third and fourth clauses are beyond the scope of the title or are in contravention of any other section of the constitution, this would not impair the validity of the clause under which the indictment was drawn. As to that feature of the legislation we are of opinion that the title is sufficient.
The judgment is affirmed.